

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2008

# Carrascosa v. McGuire

Precedential or Non-Precedential: Precedential

Docket No. 07-1748

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Carrascosa v. McGuire" (2008). *2008 Decisions.* Paper 1343.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1343

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No: 07-1748/4130
_____

MARIA JOSÉ CARRASCOSA,

Appellant

v.

LEO P. MCGUIRE, SHERIFF, BERGEN COUNTY
PETER W. INNES; Prosecutor JOHN L. MOLINELLI
(Intervenors in D.C.)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cv-00355)
District Judge:  Honorable Dickinson R. Debevoise

_____

Argued January 3, 2008

Before:   FUENTES, JORDAN, *Circuit Judges*
and O'NEILL\*, *District Judge.*

(Filed March 20, 2008)
_____

Clifford E. Lazzaro
Heather A. Fierro   [ARGUED]
Lazzaro & Associates
17 Academy Street - #1212
Newark, NJ   07102
      *Counsel for Appellant*

Danielle R. Pasquale   [ARGUED]
Office of Bergen County Counsel
One Bergen County Plaza - Rm. 580
Hackensack, NJ   07601
      *Counsel for Leo McGuire*

Peter F. Van Aulen [ARGUED]
50 Market Street
Saddle Brook, NJ   07663
      *Counsel for Peter W. Innes*

_____

      \*Honorable Thomas N. O'Neill, Jr., United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

2

Annmarie Cozzi
Carol V. Catuogno   [ARGUED]
Office of County Prosecutor
Bergen County
10 Main Street - Rm. 215
Hackensack, NJ   07601
        *Counsel for John L. Molinelli*

Jerome J. Shestack   [ARGUED]
Wolf, Block, Schorr & Solis-Cohen
1650 Arch Street - 22nd Fl.
Philadelphia, PA   19103

Alan S. Pralgever
Wolf, Block, Schorr & Solis-Cohen
101 Eisenhower Parkway
Roseland, NJ   07068
        *Counsel for Amicus Curiae*
        *Gov't Valencia Spain*

_____

OPINION OF THE COURT
_____


JORDAN, *Circuit Judge.*


Maria José Carrascosa appeals from the District Court's denial and dismissal with prejudice of her petition for a writ of habeas corpus, which sought to end her detention in the Bergen County, New Jersey jail for violating a civil contempt order issued by the Superior Court of New Jersey.

3

At the heart of this sad case, which raises questions of international and federal law under the Hague Convention's Civil Aspects of International Child Abduction, T.I.A.S. No. 11670 (Nov. 7, 1988) (the "Hague Convention"), is a custody battle over a young girl who has not seen either of her parents in years. Because we agree with the skillful analysis of the District Court, we must affirm.

## I. Jurisdiction and Scope of Review

Before reaching the merits of Carrascosa's appeal, we first address two threshold issues. The first involves whether the appeal should be dismissed as time-barred, pursuant to 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4. *Bowles v. Russell*, 127 S. Ct. 2360, 2366 (2007); *see also In re Flat Glass Antitrust Litigation,* 288 F.3d 83, 88 n.5 (3d Cir. 2002) ("[W]e have an 'independent responsibility to examine our own jurisdiction sua sponte.'") (citation omitted). The second involves, the effect, if any, that Carrascosa's failure to exhaust her state remedies prior to pursuing habeas relief has on our scope of our review.

### 1. *Jurisdictional defect*

The District Court denied Carrascosa's petition for a writ of habeas corpus on February 8, 2007 and entered a final order on February 11, 2007. On February 23, 2007, Carrascosa filed a Motion for Reconsideration. She then timely filed a Notice of Appeal in the District Court on March 12, 2007 which stated:

4

Notice is hereby given that Petitioner Maria José Carrascosa, through her undersigned attorneys, hereby appeals to the United States Court of Appeals for the Third Circuit, pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253, from a final Order entered in this action on February 11, 2007.

Notice is further given that such Order entered on February 11, 2007 is currently subject to a motion for reconsideration made pursuant to District of New Jersey Local Rule 7.1(i). Petitioner shall withdraw this Notice of Appeal, or file an amended notice of appeal, as may become necessary.

(11.8.07 Ltr. Br.[1], Ex. B.) The appeal was assigned Docket No. 07-1748. On March 20, 2007, this Court stayed the appeal and remanded to the District Court for the sole purpose of either issuing a certificate of appealability or stating reasons why a certificate of appealability should not issue. The District Court issued a certificate of appealability on March 27, 2007.

Carrascosa's Motion for Reconsideration was denied on May 15, 2007. She then filed what she styled an

---

[1]Citations to "11.8.07 Ltr. Br." refer to the letter brief filed by Carrascosa's counsel in opposition to dismissal.

"Amended Notice of Appeal" in the District Court on October 23, 2007, which stated:

> Notice is hereby given that, MARIA JOSÉ CARRASCOSA, Plaintiff in the above case, hereby amends the Notice of Appeal to the United States Court of Appeals for the Third Circuit, timely filed on March 12, 2007, from the Final Order entered in this action on February 11, 2007, to include the Final Order on Reconsideration entered in this action on May 15, 2007.

(11.8.07 Ltr. Br., Ex. C.) That second Notice of Appeal was assigned a new docket number, 07-4130. On November 1, 2007, the Office of the Clerk of this Court notified Carrascosa's counsel that her appeal in Docket No. 07-4130 may be subject to possible dismissal for a jurisdictional defect because it was not filed within thirty days of the District Court's May 15, 2007 denial of the Motion for Reconsideration, as required by Federal Rule of Appellate Procedure 4(a)(1)(A). In the meantime, the Office of the Clerk consolidated Docket Nos. 07-1748 and 07-4130 for purposes of appeal, but informed counsel that only the Court could determine matters of jurisdiction.

Carrascosa's counsel submitted a letter brief on November 8, 2007 in opposition to dismissal of her appeal in Docket No. 07-4130. The letter brief explains that, on April 23, 2007, her previous attorney had filed a motion to be relieved as counsel, and that Carrascosa entered her own

appearance, pro se, the same day. Another attorney argued her motion for reconsideration on May 15, 2007, even though the notice of substitution of counsel was not filed until May 18, 2007. Carrascosa's current counsel was retained on July 26, 2007.

Counsel candidly admits that,

> [a]t the time this firm was retained, the time to file an amended or a new Notice of Appeal of the denial of the Motion for Reconsideration under the Federal Rule of Appellate Procedure 4, heard on May 15, 2007, had expired. Additionally, the time to file a motion requesting an extension of time to file an untimely Notice of Appeal under Federal Rule of Appellate Procedure 4(a)(1) and 4(a)(5) had also expired.

(11.8.07 Ltr. Br. at 6.) Carrascosa argues, however, that her first Notice of Appeal, though filed prematurely on March 12, 2007, "specifically referenced the pending reconsideration motion," thereby signaling her intention "to seek an appeal of the denial of the Motion for Reconsideration." (11.8.07 Ltr. Br. at 7.) Carrascosa also submits that the Amended Notice of Appeal was filed only "for the purpose of a complete procedural record" because she "filed all the necessary documents for the appeal not [filed by previous counsel]" (11.8.07 Ltr. Br. at 6), and that this Court should not have assigned the Amended Notice of Appeal a new docket number, as it is nothing more than an additional piece of

7

Carrascosa's original appeal under Docket No. 07-1748. We disagree.

Carrascosa's first Notice of Appeal referenced her then-pending Motion for Reconsideration and recognized the need to file a further Notice of Appeal once the District Court decided that motion. Obviously, Carrascosa was aware of the statutory requirement to timely file a new or amended notice of appeal after the District Court denied her Motion for Reconsideration on May 15, 2007. As we explained in *United States v. McGlory*,

> Federal Rule of Appellate Procedure 4(a) provides that a notice of appeal filed before the disposition of one of the motions specified in Rule 4(a)(4)(A)[2], including a [motion for reconsideration[3]], will become effective upon entry of the order disposing of the motion.

---

[2]"If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion ... (iv) to alter or amend the judgment under Rule 59 ... ." Fed. R. App. P. 4(a)(4)(A).

[3]Motions for reconsideration "are generally treated as motions to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure." *McGlory*, 202 F.3d at 668.

Because McGlory filed his notice of appeal from the court's January 3, 1997 order while the [motion for reconsideration] was pending, the notice of appeal became effective on September 22, 1998 - the date that the District Court entered its order denying that motion.  *See* Fed. R. App. P. 4(a)(4)(B)(i)[4].  *However, in order to contest the denial of a [motion for reconsideration], a new or amended notice of appeal must be filed.*  Thus, when the District Court denied McGlory's [motion for reconsideration] on September 22, 1998, McGlory could proceed with his appeal of the January 3, 1997 order ... without further filing, but if he wanted the appeal to encompass any challenge to the order of September 22, 1998, he was required to file an amended notice of appeal.  *See* Fed. R. App. P. 4(a)(4)(B)(ii)[5]. ...

---

[4]"If a party files a notice of appeal after the court announces or enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i).

[5]"A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment altered or amended upon such a motion, must file a notice of appeal, or an amended notice of appeal ... [within 30 days after the

202 F.3d 664, 668 (3d Cir. 2000) (emphasis added) (internal citations omitted). In this case, Carrascosa's Notice of Appeal became effective on May 15, 2007 (Pa. 53)[6], the date that the District Court entered its order denying her Motion for Reconsideration (Pa. 28). As we made clear in *McGlory*, if Carrascosa wanted her appeal "to encompass any challenge to" the District Court's denial of that motion, she was required to file a new or amended notice of appeal within the thirty day time limit imposed by the Federal Rules. *Id.;* Fed. R. App. P. 4(a)(4)(B)(ii) and 4(a)(1)(A).

Recently, in *Bowles v. Russell*, the Supreme Court emphasized that "the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." 127 S. Ct. at 2366. That holding is rooted in the fact that the time limit for filing a notice of appeal is mandated by statute.[7] *Id.* at 2364. It is

judgment or order appealed from is entered] measured from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(B)(ii).

[6]Citations to "Pa." refer to the Appendix filed by Carrascosa.

[7]Section 2107 of Title 28 of the United States Code provides:

> Except as otherwise provided in this section, no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after

10

undisputed that Carrascosa's October 23, 2007 Amended
Notice of Appeal, which sought review of the District Court's
ruling on her Motion for Reconsideration, was filed far
beyond the thirty day limit imposed by 28 U.S.C. § 2107 and
embodied in Rule 4(a)(1)(A) of the Federal Rules of
Appellate Procedure. Accordingly, we do not have
jurisdiction to review any arguments raised for the first time
in Carrascosa's Motion for Reconsideration.[8] We must
therefore limit our review to the merits of the District Court's
February 8, 2007 denial of her habeas petition.[9] *Accord*

---

the entry of such judgment, order or decree.
28 U.S.C. § 2107.

[8]As explained in more detail below, these include (1)
Carrascosa's claim that it is impossible for her to comply with
the orders of the Superior Court of New Jersey, (2) her
assertion that she was denied due process during the divorce
and custody proceedings, (3) her argument that the Superior
Court wrongfully blended the custody award with punishment
and (4) her argument regarding the alleged excesses of the
Superior Court's orders.

[9]Finally, though this argument is not explicitly made, it
appears that Carrascosa is blaming her previous counsel for
the untimely filing of the Amended Notice of Appeal and
asking that she not be penalized for counsel's conduct.
Leaving aside the observation that Carrascosa is the one who
decided, more than once, to fire her counsel at a critical stage
in the case, her argument is unavailing because it seeks
essentially equitable relief from the time limit on appeals. In

11

*McGlory*, 202 F.3d at 668 ("Patently, McGlory's original notice of appeal ... could not confer jurisdiction over the District Court's ... order denying reconsideration. ...").

### 2. *Exhaustion*

The issue of exhaustion is relevant to our scope of review because, if a petitioner's claim is exhausted and has been adjudicated on the merits by a State court, her petition may not be granted unless the State court's adjudication of the claim resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In contrast, an unexhausted claim may be denied on the merits as long as the petitioner is not incarcerated "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2254(a), (b)(2).

---

*Bowles,* the Supreme Court concluded that the federal courts do not have the power to create equitable exceptions to jurisdictional requirements. *Bowles*, 127 S. Ct. at 2365 ("Congress decides what cases the federal courts have jurisdiction to consider."). Regardless of her counsel's conduct, Carrascosa's failure to timely file her Amended Notice of Appeal prevents us from exercising jurisdiction over the District Court's denial of her Motion for Reconsideration.

12

During the proceedings before the District Court, Respondent-Appellee Sheriff Leo P. McGuire ("the State") argued that Carrascosa's habeas petition was barred for failure to exhaust state remedies. *Carrascosa v. McGuire*, No. 07-0355, 2007 WL 496459, at * 5 (D.N.J. Feb. 8, 2007) ("*Carrascosa I*"); *see* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus ... shall not be granted ... unless it appears that the applicant has exhausted the remedies available in the court of the State ... ."). It is true that Carrascosa's claim was not exhausted at the time she sought habeas relief from the District Court. *Carrascosa I*, 2007 WL 496459 at *5. The District Court, however, proceeded under 28 U.S.C. § 2254(b)(2), denying Carrascosa's petition on the merits and dismissing it with prejudice, notwithstanding her failure to exhaust state remedies. *Id.* at *6, *11.

Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). The District Court was thus well within its discretion to deny Carrascosa's unexhausted claim on the merits. *See, e.g., Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all ... claims on the merits, we need not address exhaustion."); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("[W]e may reject claims on the merits even though they were not properly exhausted, and we take that approach here."); *Lambert v. Blackwell*, 387 F.3d 210, 260 n.42 (3d Cir. 2003) (addressing an unexhausted

13

claim "because it is meritless and we can therefore dismiss it under 28 U.S.C. § 2254(b)(2).") (citation omitted).[10]

---

[10]In *Lambert v. Blackwell*, 134 F.3d 506 (3d Cir. 1998), we addressed a situation where a district court granted habeas relief and ordered the petitioner's immediate release from custody after finding she had been wrongly convicted of first degree murder. *Lambert v. Blackwell*, 962 F. Supp. 1521, 1551 (E.D. Pa. 1997), *vacated by* 134 F.3d 506, 524 (3d Cir. 1998). The district court had ignored that the petitioner's claims were not exhausted and had granted her petition on the merits. *Lambert*, 962 F. Supp. at 1554. Vacating the district court's decision, we said,

> [S]ection 2254(b)(2) does not provide the district court with the authority to grant relief on the merits where the petitioner fails to exhaust state remedies. Thus, a strict reading of the statute compels us to conclude that if a question exists as to whether the petitioner has stated a colorable federal claim, the district court may not consider the merits of the claim if the petitioner has failed to exhaust state remedies ... .

*Lambert*, 134 F.3d at 515. There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2) and our subsequent

decision in *Lambert*, 387 F.3d 210, 260 n.42. Denying an unexhausted claim on the merits is consistent with the statute.

14

Though Carrascosa had not exhausted her state remedies at the time she sought habeas relief from the District Court, on appeal, she asserts that "all state remedies have now been exhausted," and that any question "of non-exhaustion of remedies is now moot."[11] (Pet. Br. at 1.) The State has not challenged that assertion, nor has it made any arguments pertaining to the exhaustion requirement. While the State has not expressly waived the issue of exhaustion, *see* 28 U.S.C. § 2254(b)(3),[12] both parties have foregone any argument pertaining to the issue for purposes of this appeal.[13]

The District Court properly proceeded pursuant to section 2254(b)(2), and issued a certificate of appealability on March 27, 2007. *Carrascosa v. McGuire*, No. 07-0355, 2007 WL 951956 (D.N.J. Mar. 27, 2007). Therefore, we have

---

[11]*See infra* at n.23 (summarizing Carrascosa's journey through the New Jersey courts); *see also Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir. 1993) ("The habeas petitioner bears the burden of proving that he has exhausted available state remedies.") (citations omitted).

[12]"A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

[13]Indeed, the State would be hard-pressed to challenge Carrascosa's petition on non-exhaustion grounds, because at this point she appears to have exhausted all available state remedies. *See infra* at n.23.

15

jurisdiction to review the District Court's decision denying Carrascosa's petition on the merits pursuant to 28 U.S.C. § 2253, which states that the final order of a district court in a habeas proceeding shall be subject to review on appeal if a certificate of appealability has issued. 28 U.S.C. §§ 2253(a) and (c)(1).

## II. Standards of Review

We apply a plenary standard of review when, as in this case, the District Court denies a habeas corpus petition based on its review of the record and does not conduct an evidentiary hearing. *Fahy v. Horn*, Nos. 03-9008, 03-9009, __ F.3d __, 2008 WL 191643, at *3 (3d Cir. Jan. 24, 2008) (citing *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)). We review the District Court's findings of fact for clear error and review *de novo* its legal conclusions. *Chadwick v. Janecka*, 312 F.3d 597, 605 n.6 (3d Cir. 2002); *see also Croll v. Croll*, 229 F.3d 133, 136 (2d Cir. 2000) ("The proper interpretation of the Hague Convention is an issue of law, which we review *de novo.*")(citation omitted).[14]

## III. Background

The factual background of this case is set forth in painstaking detail in the April 3, 2007 decision of the

---

[14]Because we review the decision to deny the petition on the merits under § 2254(b)(2), our review is of the District Court's reasoning and is not undertaken pursuant to § 2254(d).

16

Superior Court of New Jersey, Appellate Division, reported at *Innes v. Carrascosa*, 918 A.2d 686 (N.J. Super. Ct. App. Div. 2007), as well as in the prior decisions of the District Court, *see Carrascosa I*, 2007 WL 496459 (denying habeas petition); *Carrascosa v. McGuire*, No. 07-0355, 2007 WL 1456205 (D.N.J. May 15, 2007) ("*Carrascosa II*") (denying motion for reconsideration). We will therefore set forth only the facts most pertinent to our discussion, even though this truncated version fails to fully capture the toxic air of acrimony that permeates the case.

Carrascosa, a citizen of Spain, and Peter Innes,[15] a United States citizen, were married in a Catholic ceremony in Spain on March 20, 1999. *Carrascosa I*, 2007 WL 496459 at *1. Their daughter, Victoria, was born on April 17, 2000, in Seacaucus, New Jersey, and has dual citizenship in Spain and the United States. *Id.* "Innes and Carrascosa separated in early 2004." *Id.*

On October 8, 2004, Innes and Carrascosa, both represented by counsel, signed a "Parenting Agreement."[16] *Id.* The Parenting Agreement reflected their attempts to resolve custody issues pertaining to Victoria and memorializes "the terms of a proposed interim resolution of parenting time for Mr. Innes." (Pa. 59.) It specifically

---

[15]Innes participated as an intervenor in this case.

[16]The parties agree that the Parenting Agreement is a valid, binding contract under New Jersey law.

17

prohibited either of them from "traveling outside of the United States with Victoria without the written permission of the other party."[17]  (Pa. 59-60.) The parties did not seek any court's imprimatur for the Parenting Agreement.  *Carrascosa I*, 2007 WL 496459 at *1.

On December 10, 2004, Innes filed an action in the Superior Court of New Jersey seeking a divorce from Carrascosa.  *Id.*  Shortly thereafter, on December 15, 2004, Carrascosa filed an action in Spain seeking "nullification" of the marriage.[18]  *Id.*  The event at the heart of this case

---

[17]This provision, akin to a *ne exeat* clause in a court order, comports with New Jersey law, which states that even after custody is determined in a divorce proceeding, the unilateral removal of a child by a custodial parent without the other parent's consent or a court order is forbidden.  N.J.S.A. 9:2-2.

[18]Carrascosa claims that she filed a matrimonial nullity action with the Ecclesiastical Court in Spain, and that on May 24, 2004, the Ecclesiastical Court made a formal public notice of the application to annul the marriage.  The District Court found that Carrascosa's petition for matrimonial annulment was filed on December 15, 2004 and concluded that there were no prior proceedings that precluded the New Jersey courts from proceeding simultaneously under N.J.S.A. 2A:34-34 (now 2A:34-70), as there was no evidence that the Ecclesiastical Court was "a court of another state exercising jurisdiction substantially in conformity with [N.J.S.A. 2A:34-38 et seq.]."  *Carrascosa I*, 2007 WL 496459 at *1, n.1.  The

18

occurred on January 12, 2005, when Carrascosa took Victoria to Spain, without Innes's permission or knowledge. *Id.*

Shortly thereafter, on February 4, 2005, Judge Parsons of the Superior Court of New Jersey entered an order governing the divorce proceedings that Innes had initiated. *Id.* at *2. In particular, the judge ordered that Victoria "be returned from Spain immediately" and that, upon her return, the parties were to abide by the terms of the Parenting Agreement. *Id.* Carrascosa's appeal of that order was denied on March 14, 2005. *Id.* On March 22, 2005, Judge Parsons granted Innes temporary custody of Victoria, again ordered that she be returned from Spain, and, if she were not, ordered a warrant to issue automatically for Carrascosa's arrest. *Id.*

On June 14, 2005, Innes filed an application in Spain seeking the immediate return of Victoria to New Jersey and enforcement of Judge Parsons' orders. *Id.* However, Innes also made the contradictory request "that Victoria not be permitted to leave Spain" because he apparently "fear[ed] that she would be taken to a third country." *Innes,* 918 A.2d at 694. While plainly not what Innes had in mind, the Spanish

---

Appellate Division reached the same conclusion. *Innes*, 918 A.2d at 711 ("[A]n ecclesiastical annulment alone would not be cognizable in New Jersey as a first-filed action ... ."). Carrascosa argues that the District Court erred in reaching this conclusion; however, nothing in the record demonstrates that the District Court's ruling on this point was erroneous as a matter of fact or law.

Court of First Instance, No. 9 ("Spanish Court No. 9") responded with an order on June 24, 2005, prohibiting Victoria from leaving Spain until her eighteenth birthday. *Id.*; *Carrascosa I*, 2007 WL 496459 at *2. Innes appealed that decision and, on November 11, 2005, Spanish Court No. 9 reversed itself, concluding that it lacked jurisdiction because Victoria's country of habitual residence was the United States.[19] *Carrascosa I*, 2007 WL 496459 at *3. By December 9, 2005, a different Superior Court judge in New Jersey, Judge Torack, had been assigned to the case and "ordered Carrascosa to [bring] Victoria [home] by December 22, 2005, or face sanctions." *Id.* He also ordered Innes and Carrascosa to each submit to a standard custody evaluation, which Innes did, but Carrascosa refused to do. *Id.*

In the meantime, Carrascosa appealed the November 11, 2005 decision of Spanish Court No. 9. *Id.* On January 18,

---

[19]In light of Spanish Court No. 9's June 24, 2005 decision, the Superior Court dismissed portions of Innes' complaint for divorce and vacated all of its prior orders pertaining to custody and sanctions against Carrascosa. *Carrascosa I*, 2007 WL 496459 at *3. And, "[i]n an attempt to recognize the interests of the Spanish courts ... the Superior Court stayed the proceeding until [it] could talk with the Spanish courts. The Spanish courts failed to reciprocate ... ." *Id.* at *9. Once Spanish Court No. 9 reversed itself, the Superior Court reinstated all of its prior orders in the divorce action, except for the warrant for Carrascosa's arrest. *Id.* at *3.

20

2006, Spanish Appellate Court No. 10 ("Spanish Court No. 10") found that the October 8, 2004 Parenting Agreement implicitly assigned full custody of Victoria to Carrascosa. *See id.* (Spanish Court No. 10 finding that the "assignment of custody [to Carrascosa] is indeed implicitly stated in [the Parenting Agreement]" ... .). Spanish Court No. 10 then reinstated the order of Spanish Court No. 9 prohibiting Victoria from leaving Spain until her eighteenth birthday. *Id.* at *4.

Trial on the divorce proceedings began in the Superior Court of New Jersey on August 16, 2006. *Innes*, 918 A.2d at 698. Innes, Carrascosa, and their respective counsel were present, though Carrascosa expressly limited her appearance to a challenge to the court's jurisdiction. *Id.* at 713 ("[C]arrascosa only filed a 'limited notice of appearance' in this case ... ."). Judge Torack issued separate orders of final judgment of divorce on August 23 and 24, 2006.[20] *Id.* at 700. The August 23 order "dissolved the marriage between Innes and Carrascosa" and "awarded Innes sole legal and residential custody" of Victoria. *Id.* Among other things, the August 24 order required Carrascosa to "direct her attorney in Spain to apply to the [Spanish] courts for the return of Victoria's Spanish and United States passports" and to return Victoria to the United States from Spain within ten days. *Id.* The August 24 order further provided that, if Carrascosa failed to

_____

[20]An August 30, 2006 order was a corrected judgment of divorce removing an improper designation of counsel. *Innes*, 918 A.2d at 701.

21

comply, a warrant for her arrest would issue immediately and "she [would] remain in the Bergen County jail until Victoria [is turned over to Innes]." *Id.* at 700-01. Carrascosa made no efforts to obtain Victoria's passports or return her to the United States. *Id.* at 701. On September 1, 2006, Judge Torack issued a warrant for Carrascosa's arrest and an order of commitment, effective until Victoria is returned to Innes. *Id.* Carrascosa was arrested in New York and incarcerated late November 2006, pursuant to the Superior Court's commitment order. *Carrascosa I*, 2007 WL 496459 at *5; *Innes*, 918 A.2d at 702. She has since been in the Bergen County jail.[21] *Id.*

Carrascosa petitioned the District Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(b)(1), seeking to end and enjoin her detention. As noted earlier, the District Court denied her petition with prejudice on February 8, 2007. *Carrascosa I*, 2007 WL 496459 at *11. The District Court's February 8, 2007 opinion analyzed the decisions of the Spanish courts and determined that they ignored the mandates of the Hague Convention by impermissibly making custody determinations and failing to address and apply New Jersey

---

[21]We note that Carrascosa is also incarcerated pending trial on criminal charges in the Superior Court of New Jersey, namely, eight counts of second degree interference with custody and one count of fourth degree contempt. *State v. Carrascosa*, Indictment No. 2222-06. This has no impact on our decision and serves simply to explain the Bergen County Prosecutor's participation as an intervenor in this appeal.

law. *Carrascosa I*, 2007 WL 496459 at *6, *9. The District Court also determined that the decision of Spanish Court No. 10 was "not entitled to reciprocity on principles of comity." *Id.* at *6 (citing *Diorinous v. Mezitis*, 237 F.3d 133, 142 (2d Cir. 2001)). Implicit in the District Court's decision is a determination that the Superior Court was acting within the proper scope of its authority by holding Carrascosa in contempt, and therefore her federal habeas petition set forth no basis for relief. Carrascosa's petition was thus denied and she remained incarcerated for her failure to comply with the orders of the Superior Court.[22] *Id.* at *11.

---

[22]The chronology of Carrascosa's subsequent journey through the state and federal courts can be summarized as follows:

After the District Court denied her habeas petition, Carrascosa filed on February 23, 2007 a Motion for Reconsideration of the District Court's decision and, on March 12, 2007, her first Notice of Appeal. We stayed her appeal on March 20, 2007, pending the District Court's issuance of the certificate of appealability, which was issued on March 27, 2007. *Carrascosa v. McGuire*, No. 07-0355, 2007 WL 951956 (D.N.J. Mar. 27, 2007). On April 3, 2007, the Appellate Division of the Superior Court of New Jersey issued its opinion affirming the Superior Court's divorce and custody decisions. *Innes*, 918 A.2d at 716. The District Court denied Carrascosa's Motion for Reconsideration on May 15, 2007. *Carrascosa II,* 2007 WL 1456205 at *2. Carrascosa's petition for certification to the Supreme Court of New Jersey was denied without opinion on June 21, 2007. *Innes v.*

23

## IV. Discussion

Before us is Carrascosa's appeal from that February 8, 2007 decision denying her petition for a writ of habeas corpus. She argues that the District Court erred both in finding that the Spanish courts departed from the mandate of the Hague Convention and in failing to afford comity to the decisions of the Spanish courts.[23]

_____

*Carrascosa*, 926 A.2d 857 (N.J. 2007). Carrascosa then filed her Amended Notice of Appeal on October 23, 2007.

[23]Carrascosa had further argued that it is impossible for her to comply with the orders of the Superior Court to secure Victoria's passports and return Victoria to the United States from Spain. While the record on this point leaves us as unimpressed as was the District Court, *Carrascosa II*, 2007 WL 1456205 at *6, it was raised for the first time in Carrascosa's Motion for Reconsideration, the denial of which we lack jurisdiction to review, *see supra* at pp. 3-9.

Carrascosa also argued, through the amicus brief of the Government of the Comunidad Valenciana Region ("Valencia"), that she was denied due process during the divorce and custody proceedings in the Superior Court. Valencia, a constituent province of Spain, participated as amicus on appeal by consent of the parties and with leave of this Court. As explained in more detail, *infra* at p. 28, we are also without jurisdiction to review that argument.

### A. The Spanish Courts Disregarded the Mandates of the Hague Convention and the District Court Did Not Err in Refusing to Afford Comity to Their Decisions

The Hague Convention "reflects a universal concern about the harm done to children by parental kidnapping and a strong desire among [the countries who are signatories to the Hague Convention] to implement an effective deterrent to such behavior."[24] *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995) (citing Hague Convention, Preamble; 42 U.S.C. § 11601(a)(1)-(4)). "The United States Congress implemented the Convention through the International Child Abduction Remedies Act, 41 U.S.C. § 11601 *et seq.,* expressly recognizing its 'international character' and the 'need for uniform international interpretation' of its provisions." *Id.* (citing 42 U.S.C. § 11601(b)(2), (3)(B)).[25]

The Hague Convention's "approach to the phenomenon of international child abduction is straightforward." *Id.* It aims to protect the legal custody

---

[24]Both the United States and Spain are signatories to the Hague Convention. U.S. Department of State, "List of Hague Convention Signatory Countries," available at <http://travel.state.gov/family/adoption/convention/conventio n_461.html> (last accessed February 6, 2008).

[25]The parties agree that the issues in this case are governed by the Hague Convention and its implementing legislation, ICARA, 41 U.S.C. §§ 11601 *et seq.*

rights of the non-abducting parent and "is designed to restore the 'factual' status quo which is unilaterally altered when a parent abducts a child." *Id.* "Thus, the cornerstone of the Convention is the mandated return of the child to his or her circumstances prior to the abduction if one parent's removal of the child from [a country that is a signatory to the Hague Convention] has violated the custody rights of the other, and is, therefore, 'wrongful.'" *Id.* (citations omitted); *see also* Hague Convention, Article 12 ("Where a child has been wrongfully removed ... the authority concerned shall order the return of the child forthwith.").

"[A]n order of return is available as a remedy *only* for wrongful removals or retentions ... ." *Croll v. Croll*, 229 F.3d 133, 137 (2d Cir. 2000) (original emphasis).[26] Under Article 3 of the Hague Convention, the removal of a child is wrongful when:

> a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal ... and

---

[26]"[A] federal court retains, and should use when appropriate, the discretion to return a child ... if return would further the aims of the Convention." *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996) (citing *Feder*, 63 F.3d at 226 (citation omitted)).

b.  at the time of removal ... those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal ... .

Hague Convention, Article 3.  Rights of custody "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."  *Id.*

In short, the Hague Convention is designed to put all participants in a custody dispute back into the positions they would have been in but for one parent's wrongful removal of the child.  It is not, and was never meant to be, a vehicle for determining custody rights.  Indeed, Article 19 of the Hague Convention provides that "[a] decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody dispute."  Hague Convention, Article 19; *see also, e.g.,* 42 U.S.C. § 11601(b)(4) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying custody claims."); *Friedrich v. Friedrich*, 78 F.3d 1060, 1063-64 (6th Cir. 1996) ("[A] court in the abducted-to nation has jurisdiction to decide the merits of an abduction claim, but not the merits of the underlying custody dispute.") (citations omitted); *Feder*, 63 F.3d at 221, n.5 ("...The Hague Convention ... does not settle custody disputes ... .") (citations omitted).

27

The District Court's decision denying Carrascosa's petition properly applied the law of the Convention and its implementing legislation. The Court first recognized that "[t]here is no dispute that [Victoria's] place of habitual residence, prior to Carrascosa's removal of her to Spain, was the United States, in particular New Jersey."[27] *Carrascosa I*, 2007 WL 496459 at *7; *accord Feder*, 63 F.3d at 224 ("... a child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective."). This is a fact impossible to deny on the record, and Spanish Court No. 9 agreed that Victoria's "habitual residence was in the United States ... ." *Carrascosa I*, 2007 WL 496459 at *7.

As to the question of whether Victoria's removal to Spain was wrongful under Article 3 of the Hague Convention, the District Court examined, first, whether Innes's custody rights were breached by Victoria's removal and, second, whether Innes was exercising those rights at the time of her removal. *Id.* at *7-*8 (citing *Feder*, 63 F.3d at 225). The Court noted that, "[a]lthough Innes and Carrascosa signed [the Parenting Agreement]," there was no court order

---

[27]Because New Jersey was Victoria's habitual place of residence, the District Court correctly concluded that the Superior Court "had subject matter jurisdiction over [this] international custody dispute ... ." *Carrascosa I*, 2007 WL 496459 at *8 (citing N.J.S.A. 2A:34-53) (other citation omitted).

pertaining to custody at the time Victoria was taken to Spain. *Id.* at *7. Absent a court order stating otherwise, New Jersey parents possess equal custody rights to their children. *Innes,* 918 A.2d at 707 (citing *Scanlon v. Scanlon*, 102 A.2d 656, 661 (N.J. Super. Ct. App. Div. 1954) ("In a contest between the mother and father, neither has the superior right to custody of the child.")). The Parenting Agreement was certainly not an adjudication concerning Victoria's custody. Pending such an adjudication, Innes and Carrascosa shared joint custody of their daughter under New Jersey law.

To determine whether Innes was exercising custody rights, the District Court looked at whether he had "any sort of regular contact with [Victoria]" prior to her removal. *Carrascosa I*, 2007 WL 496459 at *7 (citing *Friedrich,* 78 F.3d at 1065). The Court then found that, "[w]ithout a doubt," Innes had regular contact with Victoria prior to his separation from Carrascosa and that, after their separation, he continued having regular contact with Victoria. *Id.* at *8. The District Court concluded that Innes "exercis[ed] his custody rights in accordance with the [Parenting Agreement] until Carrascosa prevented him from doing so" by taking Victoria to Spain. *Id.* at *8; *Innes*, 918 A.2d at 698. Because Innes had custody rights under New Jersey law and was exercising those rights at the time of Victoria's removal, and Carrascosa breached those rights by removing Victoria to Spain without Innes's consent, Victoria's removal was "wrongful" within the meaning of Article 3 of the Hague Convention. *See Feder,* 63 F.3d at 226 (holding that, when parents are exercising joint custody over their child, one

parent's unilateral decision to take that child to another country is wrongful within the meaning of the Convention).

The District Court then analyzed Spanish Court No. 10's decision, observing that it recited certain provisions of the Hague Convention, *Carrascosa I*, 2007 WL 496459 at *9, but that there was a "glaring departure ... from the mandate of the Hague Convention" in its "total failure to determine Innes's rights of custody under New Jersey law ... ." *Id.* For example, Spanish Court No. 10 openly acknowledged that it was applying Spanish law when it found part of the October 8, 2004 Parenting Agreement was invalid:

> Therefore, when, or about, January 12, 2005, the mother brought her daughter to Spain, she breached the [October 8, 2004 Parenting Agreement]. However, in Spain such agreement could only be considered a letter of intent therefore no solution whatsoever could be imposed for such breach of contract, as it was an agreement limiting the fundamental rights contained in Article 19 of the Constitution that guarantees all Spanish citizens the right to freely choose their place of residence and the use of such expression in the agreement can not be deemed valid. The incompatibility of this restrictive clause with Spanish law regarding fundamental rights, under the autonomous system of the Civil Procedure Act, implies grounds for a public litigation order and from the standpoint of Article 20 of the [Hague]

30

Convention, in justification for a refusal to
return the child, as has been requested.[28]

---

[28]Valencia argues that Spanish Court No. 10 found that the
Parenting Agreement violated the fundamental rights of
Spanish citizens contained in Article 19 of the Spanish
Constitution, through application of Article 20 of the Hague
Convention, and that its decision should be afforded comity.
This argument is on the edge of our jurisdiction, as it was not
fully aired until Carrascosa filed her Motion for
Reconsideration.  However, because the operative portion of
Spanish Court No. 10's opinion was considered by the District
Court when it denied Carrascosa's petition, albeit in a
somewhat different context, *Carrascosa I*, 2007 WL 496459
at *9, we venture to observe that it has no merit.

We are told that Article 19 of the Spanish Constitution
states that "Spaniards have the right to freely choose their
place of residence and to freely move about within the
national territory." (Valencia Br. at 15 (citing Constitucion,
C.E. chap 2, sec. 19).)  Article 20 of the Hague Convention
provides that "the return of [an abducted] child ... may be
refused if this would not be permitted by the fundamental
principles of the requested State relating to the protection of
human rights and fundamental freedoms."  Spanish Court No.
10 determined that the Parenting Agreement restricted the
rights of Spanish citizens to freely choose where they travel
and live and hence was a "justification for a refusal to return
the child ... ."  *Carrascosa I*, 2007 WL 496459 at *9.

If one assumes that Carrascosa is the one about whom
Spanish Court No. 10 was concerned – and some comments at

31

*Carrascosa I*, 2007 WL 496459 at \*9.

Given the "bald statement that [Spanish Court No. 10] would apply Spanish law in total disregard of the law of New Jersey as required by the Hague Convention," the District Court determined that there had been a "complete disregard of the principles of international comity." *Id.* at \*10. The Court went on to observe that "[t]he Spanish court departed from the limited issue it was authorized to decide under the Hague

_____

oral argument by Valencia's counsel indicated that that may have been the case – we can only note that the argument has no basis in fact because, prior to her running afoul of the New Jersey child abduction laws and court orders, Carrascosa was free to travel where and when she liked. Nothing in New Jersey law or the Parenting Agreement purported to restrict her travel at all. If, however, the Spanish Court was commenting on Victoria's right to travel, there are a number of problems with its conclusion, not least of which is that small children like Victoria do not make international travel decisions. They are taken on trips by adults, in this case wrongfully. Leaving that aside, however, a fundamental logical problem remains. To say that a country can decline to return a child to the child's habitual residence on the theory that the child's right to travel is a "fundamental freedom" that would be violated by the return has the effect of rendering the Hague Convention meaningless. Construing an exception in a way that swallows the main purpose of a treaty is inconsistent with what we take to be commonly understood rules for construing legal instruments.

Convention and undertook to resolve the wide range of issues involved in a custody dispute, in spite of the fact that the Hague Convention mandated that [it] order[] the return of Victoria ... to New Jersey." *Id.* at *10. The District Court ultimately concluded that the Spanish courts' finding that "Carrascosa had exclusive custody of the child and that Innes did not have custody because there was no court order granting him custody ... [was] clearly wrong" under the Hague Convention and New Jersey law. *Id.* at *11. The District Court also disagreed with the Spanish courts' decision that Innes only had visitation rights, as opposed to custody rights under the Parenting Agreement, and ultimately determined that the Spanish court's decision was "outside of the terms of the Hague Convention." *Id.*

The Spanish courts never applied New Jersey law in this case, despite their recognition that Victoria's habitual place of residence was New Jersey. Spanish Court No. 10, in particular, paid lip service to the Hague Convention and then proceeded to apply Spanish law in its analysis. *Carrascosa I*, 2007 WL 496459 at *10. The record demonstrates that the Spanish courts made custody determinations in direct

33

contravention of both the letter and the spirit of the Hague Convention.[29]  *See, e.g., id.* at * 3 (determination that

[29]Carrascosa argues on appeal that Innes did not have any custody rights to Victoria, relying heavily on the case of *Croll v. Croll*, 229 F.3d 133 (2d Cir. 2000).  Her reliance is entirely misplaced.  In *Croll*, the Second Circuit held that rights of access are not rights of custody enforceable by a return remedy under the Hague Convention, even when coupled with a *ne exeat* clause.  *Id.* at 135, 143-44.  Central to the Second Circuit's decision and reasoning was the fact that a Hong Kong court issued a custody order granting Mrs. Croll sole "custody, care and control" of the couple's daughter, Christina, while granting Mr. Croll a right of "reasonable access."  *Id.* at 135 (citation omitted).  The order also directed that Christina "not be removed from Hong Kong until she attains the age of 18 years" without leave of court or consent of the other parent.  *Id.* at 135.

The Second Circuit succinctly stated the issue in *Croll* as follows: "If Mr. Croll has custody rights, courts in the United States have jurisdiction to order return of Christina to Hong Kong, as the district court has done, and the duty to do so.  If, however, Mr. Croll has the lesser rights of access, jurisdiction is lacking and Mr. Croll must rely on other remedies."  *Id.* at 136.  The Second Circuit ultimately determined that, because of the court order conferring sole custody upon Mrs. Croll, Mr. Croll did not have "custody rights" as contemplated by the Hague Convention.  *Id.* at 143.  In sharp contrast to those facts, there was no such court order in this case, and, as already discussed, Innes had and was

34

Parenting Agreement assigned full custody to Carrascosa). We therefore agree with the District Court that the Spanish courts "were not acting in accordance with the Hague Convention" and there was "no obligation on American courts to enforce their judgments." *Id.* at *7.

In sum, the "Spanish courts departed from the requirements of the Hague Convention in not returning [Victoria] to New Jersey so that ... custody ... could be litigated there." *Carrascosa I*, 2007 WL 496459 at *7; *see Feder*, 63 F.3d at 221, n.5 ("The Hague Convention ... does not settle custody disputes... .") (other citations omitted); *Friedrich*, 78 F.3d at 1063-64 ("[A] court in the abducted-to nation has jurisdiction to decide the merits of an abduction claim, but not the merits of the underlying custody dispute."); Hague Convention, Article 19; 42 U.S.C. § 11601(b)(4). As did the District Court, we conclude that the Spanish courts departed from the fundamental premise of the Hague Convention and violated principles of international comity by not applying New Jersey law. *Carrascosa I*, 2007 WL 496459 at *11. We further conclude that the Superior Court of New Jersey had authority to rule on Victoria's custody and to issue orders pertaining to Carrascosa's civil contempt and incarceration. We therefore agree with the District Court's conclusion that Carrascosa's habeas petition is without merit

---

exercising his rights to custody of Victoria at the time she was wrongfully removed to Spain. Under the Hague Convention, the remedy for such wrongful removal is to return Victoria to the United States. *Id.* at 136, 137.

and that her incarceration for civil contempt is not "in violation of the laws or treaties of the United States," 28 U.S.C. § 2254(a).

## B. *Carrascosa's Due Process Arguments*

Carrascosa argues that she was denied due process during the divorce and custody proceedings in the Superior Court because she was not permitted to present evidence, or testify, or cross-examine witnesses on the issue of custody. These arguments were not presented to the District Court in Carrascosa's habeas petition. They did, however, feature prominently during oral argument, as they were raised for the first time in Valencia's amicus brief, an oddity acknowledged therein.[30] We are tempted to address these arguments because their seriousness would typically warrant a response, and, on this record, perhaps a rebuke. However, because they were not raised in Carrascosa's habeas petition, they are not properly before us. Suffice it to say that these same issues were generally addressed and disposed of by the Superior

---

[30]"As *amicus* for a foreign nation, we are reluctant to raise issues of due process in a court proceeding which took place in a highly respected nation." (Valencia Br. at 26.)

Court of New Jersey, Appellate Division.[31] *Innes*, 918 A.2d at 712-715.

## V.     Conclusion

For the foregoing reasons, the District Court's denial of Carrascosa's petition for a writ of habeas corpus will be affirmed.

---

[31]Again, we also lack jurisdiction to review Carrascosa's arguments that custody was already determined at the time of trial, that the Superior Court wrongfully blended the custody award with Carrascosa's punishment, and her arguments regarding the excesses of the Superior Court's orders. We note that the Appellate Division found these arguments unpersuasive. *Innes*, 918 A.2d at 714-15.