**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1762
_____

CARLOS DEANS,
                            Appellant

v.

KENNEDY HOUSE, INC., Corporation, Defendant Employer;
SEIU LOCAL BJ, CTW-CLC, Corporation, Defendant, Union;
THOMAS SMITH, Individual, SEIU Union Advocate;
ROBERT MCMILLAN, Individual Union Shop Steward;
JAMES GIBLIN, Individual, General Manager;
VAUGHN JOHNSON, Individual, Supervisor
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-07125)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 9, 2014

Before:  FISHER, VANASKIE and GARTH, Circuit Judges

(Filed: October 10, 2014)
_____

OPINION
_____

PER CURIAM

Pro se appellant Carlos Deans appeals the District Court's orders dismissing his complaint in part and then granting summary judgment to the defendants on his remaining claims. We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. See Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013) (motion to dismiss); State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009) (summary judgment). For the reasons set forth below, we will affirm.

Deans, an African-American male, was employed as a housekeeper by a residential building called the Kennedy House from August 2007 through February 2011. During this time, Deans was a member the Local 32BJ of the Service Employees International Union ("the Union"). Friction developed between Deans and the Kennedy House in the summer and early fall of 2010 due to Deans's tardiness and absence from work, which, Deans claimed, was caused by problems with his child-care arrangements. To punish Deans for these attendance issues, Kennedy House — and, more particularly, Vaughn Johnson (Deans's immediate supervisor) and James Giblin (Kennedy House's general manager) — gave him an oral warning, then a written warning, and finally docked him 15 minutes of pay. While providing the verbal warning, Giblin asked Deans whether he was his family's breadwinner; Giblin claims he asked the question to emphasize to Deans that he should dedicate himself more fully to the job, while Deans contends, as he put it in a later filing with the Equal Employment Opportunity

2

Commission (EEOC), that he was "being disciplined for not fitting into a traditional male role as breadwinner, having [his] spouse be responsible for childcare issues."

In January 2011, Deans left work with a back injury. He was admitted to the emergency room on January 13, 2011, and was diagnosed with muscle spasms and a back strain; the discharge paperwork stated that the pain should cease in five to seven days. Deans was apparently communicating with Johnson about his absence from work, but Giblin was not kept informed. On January 24, 2011, Giblin wrote Deans to ask him when he would return to work, and instructed him to bring a doctor's note when he did. Deans responded on February 1, 2011, stating that he could get a note from his doctor on March 8, 2011. On February 10, 2011, Giblin replied that it was unacceptable for Deans to remain out of work for this length of time, and he terminated Deans's employment. The Union challenged this termination through the grievance procedure set forth in the collective bargaining agreement, to no avail.

Deans then filed a complaint in the District Court, raising a number of claims against Kennedy House and its employees ("the Kennedy Defendants") and the Union and its leaders ("the Union Defendants") (collectively, "the defendants"). These claims included, among others, that the defendants subjected him to gender discrimination in violation of Title VII, that the defendants subjected him to race discrimination in violation of Title VII and 42 U.S.C. § 1981, that the defendants retaliated against him for filing a charge with the EEOC in violation of Title VII, that the Kennedy Defendants

3

violated the collective bargaining agreement, and that Union Defendants breached their duty of fair representation.

The District Court dismissed the complaint in part, while permitting numerous claims against all defendants to proceed. After taking discovery, the parties filed cross-motions for summary judgment. In a comprehensive 57-page opinion, the District Court granted judgment to the defendants. Deans then filed a timely notice of appeal.[1]

We agree with the District Court's disposition of this case. Turning first to Deans's race- and gender-discrimination claims, where, as here, the plaintiff proceeds under a pretext theory,[2] claims under the Title VII and § 1981[3] are evaluated under the

---

[1] Deans also filed a Rule 59(e) motion challenging the District Court's summary-judgment order, which the District Court denied after Deans had filed his notice of appeal. Because Deans did not file a new or amended notice of appeal encompassing the order denying the Rule 59(e) motion, the Court lacks jurisdiction to consider that order. See Fed. R. App. P. 4(a)(4)(B)(ii); Carrascosa v. McGuire, 520 F.3d 249, 253-54 (3d Cir. 2008).

[2] To the extent that Deans seeks to proceed on a mixed-motive theory, we conclude that he failed to present sufficient evidence to survive summary judgment showing that his race or gender was a motivating factor in the Kennedy Defendants' decision to terminate his employment. See generally Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003). In passing, Deans contends that he has "direct evidence" of the defendants' discrimination, but he points to only stray comments — such as Giblin's question about whether he was his family's breadwinner — made well before and apart from his termination. See generally Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) ("direct evidence does not include stray remarks in the workplace, particularly those made by nondecisionmakers or statements made by decisionmakers unrelated to the decisional process itself").

[3] The relevant standards under Title VII and § 1981 are the same, see Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999), although § 1981 applies to only race discrimination.

4

burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Under this framework, an employee is first required to establish a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. To do so, the employee must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an "adverse employment action"; and (4) and "the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008).

Deans first argues that the District Court erred in concluding that he did not suffer an adverse employment action when the Kennedy Defendants gave him oral and written warnings and docked his pay. We are not persuaded. Here, the warnings would remain in his file only temporarily and did not "effect a material change in the terms or conditions of his employment"; we therefore cannot "characterize them as adverse employment actions." Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see also Davis v. Town of Lake Park, 245 F.3d 1232, 1236 (11th Cir. 2001). Likewise, the 15 minutes of docked pay is simply too "negligible" to qualify as an adverse employment action, especially given that Deans presented no evidence that this

5

loss of income affected his well-being.  Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004).[4]

Next, Deans argues that, in holding that he had failed to show that his termination "occurred under circumstances that could give rise to an inference of intentional discrimination," Makky, 541 F.3d at 214, the District Court erred in concluding that William Curran, a white employee, was not similarly situated to him.  See generally Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 366 (3d Cir. 2008).  This argument lacks merit. The Kennedy Defendants stated that Deans was terminated due to his lengthy absence from work; Deans has presented evidence only that Curran was sometimes tardy, not that he was out of work for a prolonged period.  See, e.g., Simpson v. Kay Jewelers, 142 F.3d 639, 647 (3d Cir. 1998) ("In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.").

---

[4] Deans also argues that in December 2010, his schedule was changed so that he worked Monday through Friday rather than Wednesday through Sunday, and that this schedule change qualifies as an adverse employment action.  However, he did not develop this argument in the District Court, and has thus waived it.  See C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 73 (3d Cir. 2010).  Moreover, while "[a]ssigning an employee to an undesirable schedule can be more than a 'trivial' or minor change in the employee's working conditions," Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 788 (3d Cir. 1998), Deans has failed to present any evidence that this schedule change was actually unfavorable to him, which is fatal to the claim, see, e.g., Morales-Vallellanes v. Potter, 605 F.3d 27, 39 (1st Cir. 2010).

Deans also contends that the District Court erroneously rejected his retaliation claim as to the Kennedy Defendants. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in a protected activity under Title VII; (2) the employer took an adverse action against him; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).

It is true that Deans's filing an EEOC charge qualifies as a protected activity. See Abramson v. William Paterson Coll., 260 F.3d 265, 288 (3d Cir. 2001). Deans did not pursue this charge, however, until after he had received his oral and written warnings, and there thus cannot be a causal connection between those events. This leaves two potential adverse actions — Deans's loss of pay and termination. As we held above, Deans forfeited only 15 minutes of pay and presented no evidence that this caused a material harm; it therefore does not qualify as an adverse action. See Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68. Further, Deans's termination occurred more than two months after he filed his second EEOC charge; this temporal proximity is "not so close as to be unduly suggestive." See Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (quotation marks omitted). Deans has presented no other evidence suggesting that the Kennedy Defendants fired him because of his EEOC complaint. Accordingly, the District Court properly granted judgment to the Kennedy Defendants on this claim.

7

Deans further argues that the Kennedy Defendants violated the collective bargaining agreement and that the Union Defendants breached their duty of fair representation. The District Court interpreted Deans to thus assert a hybrid action under § 301 of the Labor Management Relations Act, and, as Deans has not objected to this characterization of the claim, we will do the same. To prevail on this claim, Deans was required to show both that (1) the Kennedy Defendants breached the CBA and (2) the Union Defendants breached their duty of fair representation. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 165 (1983). The District Court granted judgment to the defendants on the ground that Deans had failed to establish that the Union Defendants violated their duty of fair representation. See, e.g., Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993) (noting that plaintiff must establish violations by both employer and union).

On appeal, Deans contends that the Union Defendants violated their duty to him by failing to pursue grievances on his behalf. To the extent that he refers to their failure to grieve the oral and written warnings he received, we agree with the District Court that the claims are barred by the relevant six-month statute of limitations. See Podobnik v. U.S. Postal Serv., 409 F.3d 584, 593 (3d Cir. 2005). To the extent that he refers to a failure to grieve his termination, his contention is belied by the record — the Union Defendants did challenge the termination.

Deans also argues that, in contesting his termination, the Union Defendants breached their duty by skipping directly to step 2 of the grievance process (forgoing the

8

relatively informal meeting between a union steward, Deans, and either Johnson or Giblin) and failing to be more active during the grievance proceedings. However, to establish a breach of the duty of fair representation, Deans must show that the Union Defendants' alleged dereliction "damaged the grievance presentation." Findley v. Jones Motor Freight, Div. Allegheny Corp., 639 F.2d 953, 959 (3d Cir. 1981). He has failed to present any evidence (or even any allegations) to suggest that, had the Union Defendants taken the action he describes, he would have been successful in grieving his termination. Thus, we discern no error in the District Court's denial of this claim.

Deans next argues that the District Court erred in holding that he had failed to exhaust his Title VII discrimination and retaliation claims against the Union Defendants. See generally Burgh v. Borough Council, 251 F.3d 465, 470 (3d Cir. 2001) (detailing exhaustion requirement). This claim lacks merit. Deans raised his objection concerning the Union Defendants' conduct not in a formal charge or even an intake form, but in only a private letter. This does not suffice to exhaust the claims. See Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999); Holtz v. Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2001). This lack of exhaustion bars Deans from asserting these claims in federal court. See, e.g., Burgh, 251 F.3d at 470.

Finally, we note that, in his briefs, Deans has adverted to numerous other claims, but has failed to develop them in any way. The claims are therefore waived. See, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993); Al-Ra'id v. Ingle, 69 F.3d 28, 31 (5th Cir. 1995).

9

Accordingly, we will affirm.