NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4377
_____

JEFFREY R. FOGG,
                                        Appellant

v.

*PERRY PHELPS, Warden;
ATTORNEY GENERAL OF THE STATE OF DELAWARE

*(Pursuant to Rule 43(c), F. R. A. P.)
_____

On Appeal from the United States District Court
for the District of Delaware
D.C. Civil Action No. 03-cv-00558
(Honorable Sue L. Robinson)
_____

Argued November 2, 2010

Before:  SCIRICA, STAPLETON and ROTH, *Circuit Judges*.

(Filed: January 6, 2011)

PETER A. LEVIN, ESQUIRE (ARGUED)
1927 Hamilton Street
Philadelphia, Pennsylvania 19130
        *Attorney for Appellant*

ELIZABETH R. McFARLAN, ESQUIRE (ARGUED)
Deputy Attorney General
Delaware Department of Justice
Carvel Office Building, 6th Floor

820 North French Street
Wilmington, Delaware 19801
 *Attorney for Appellees*

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

After a joint jury trial with co-defendant Daryl Andrus, Appellant Jeffrey Fogg

was convicted of murder in the first degree and conspiracy in the first degree for his role

in the April 5, 1995 death of James Dilley. The Delaware Superior Court sentenced him

to a mandatory term of life imprisonment without the benefit of parole or probation for

the murder conviction. Fogg unsuccessfully pursued post-conviction remedies in the

Delaware state court system, and the District Court denied his petition for a writ of

habeas corpus. We granted a certificate of appealability with regard to four issues raised

in Fogg's habeas petition. However, because Fogg cannot demonstrate an entitlement to

relief on any of these grounds, we will affirm.

## I.

Fogg, Dilley, Cheryl Adams and John Cathell were among the guests at a party

hosted by Andrus on April 4, 1995.[1] At some point that afternoon, Fogg provoked a fight

---

[1] The District Court relied on the facts section of its opinion directly from the Delaware
Supreme Court's order on direct appeal affirming Fogg's convictions and sentence. *Fogg
v. State*, 1998 Del. LEXIS 360 (Del. Oct. 1, 1998). Under 28 U.S.C. § 2254(d)(2), a
federal court may grant a petitioner habeas relief if the state court unreasonably
determined the facts based on the evidence adduced at trial. On appeal, Fogg has not
raised such a claim. Consequently, we will follow the District Court's lead and

2

with Cathell by kicking his leg and knocking off his hat. The party later migrated to the basement, where Fogg and Cathell recommenced their skirmish. Around 8:00 p.m., Andrus, Fogg and Adams rousted themselves and went to a bar, where they remained for approximately 90 minutes. Adams described the two men as rowdy and excited from the drinking and fighting. They stopped at a liquor store en route back to Andrus' residence, and Dilley was still at that destination when they arrived there between 10:00 and 10:30 p.m. Andrus and Fogg were in the kitchen pouring glasses of sambucca when Adams departed 20 minutes after their return. The three men were the only people remaining in the dwelling.

At approximately 7:30 a.m. the following morning, an ambulance from the local fire company responded to a call at Andrus' address. Emergency medical technicians found Dilley motionless on the floor. Fogg began mouth-to-mouth resuscitation efforts while the EMTs began CPR compressions. Paramedics arrived shortly thereafter, and Andrus directed them to the victim. The paramedics detected traces of rigor mortis in Dilley's jaw and finger and could not locate a pulse. CPR was discontinued, and Dilley was pronounced dead at 7:42 a.m.[2]

Fogg told Detective Quinton Watson he had fallen asleep almost immediately after returning home from the bar the previous night. He claimed to have been awakened in the

---

incorporate the germane facts from the Delaware Supreme Court's order into this opinion.

[2] The viciousness of the beating to which Dilley was subjected is described in greater detail in section III.B.3 *infra*.

3

morning by Andrus calling his name from the hallway outside the bathroom where Dilley was lying face-up in the bathtub, cold and bloodied. Fogg told Watson he and Andrus lifted Dilley from the tub, dragged him to Andrus' bedroom, put blankets and a heater next to him, and began to perform mouth-to-mouth resuscitation. According to Fogg's account, Andrus went across the street to call for an ambulance while Fogg continued his revival efforts.

Fogg and Andrus were transported to police headquarters for further questioning. In his final interview, Fogg admitted to police he had struck Dilley with his hand. Fogg was then arrested and charged with both hindering prosecution and first-degree murder. While Andrus and Fogg were in police custody, other officers canvassed the Andrus residence for evidence. The living room and hallway walls, the floor, the refrigerator door, and the blinds, sink and shower in the bathroom were stained with apparent blood splatter. The bathtub was three-quarters filled with red-brown water and had several items floating in it. A pair of black boots was discovered in the living room, and a pair of cowboy boots and a single black boot were located in the bedroom a few feet away from Dilley's body. Police found pieces of broken dentures in the bathtub, on the living room floor, and on the bedroom floor next to the body; a tooth in the hallway; a pair of wet and bloody jeans on the door handle of a second bedroom; and a wet shirt and sock outside the basement on the ground.

The day after the arrests, the Medical Examiner called police to ask whether any jewelry had been confiscated from the scene or from the defendants' persons. Police

4

provided the M.E. with a wizard ring belonging to Andrus and a ring bearing the image of a skull's face wearing a Viking helmet belonging to Fogg. At trial, Dr. Adrienne Perlman, the Assistant M.E., testified Dilley had distinct "patterned injuries" on his body that were caused by the defendants' rings and the cowboy boots and single black boot recovered from Andrus' bedroom. The cowboy boots were later identified by a podiatrist as matching casts of Andrus' feet. Police lifted palm prints from the reddish-brown stains on the walls in the living room, hallway and master bedroom, and Corporal Ronald Webb testified they were of value for identification purposes as belonging to Fogg and Andrus.

## II.

On May 1, 1995, Fogg and Andrus were jointly indicted on charges of Murder in the First Degree and Conspiracy in the First Degree. Fogg filed a pre-trial motion to sever the charges, which the Superior Court denied. On May 3, 1996, following a joint trial, a Delaware Superior Court jury found Fogg and Andrus guilty on both charges. The court sentenced Fogg to a mandatory term of life imprisonment without the benefit of probation or parole for the murder conviction, and to five years in prison, suspended after four years for probation, for the conspiracy conviction. *See Fogg*, 1998 Del. LEXIS 360, at *1–*2.

Fogg filed a direct appeal, claiming (1) his statements to police were obtained in violation of his Fifth Amendment *Miranda* rights; and (2) the Superior Court mistakenly concluded the statement to police was the product of a voluntary, knowing and intelligent

5

waiver of his *Miranda* rights. The Delaware Supreme Court *sua sponte* identified a third issue under *Bruton v. United States*, 391 U.S. 123 (1968), and requested supplemental briefing regarding the Confrontation Clause implications of Andrus' statements as related to and testified to by Robert Richmond, an inmate at a Delaware correctional facility. On February 20, 1998, the Delaware Superior Court acknowledged admission of Andrus' statement via Richmond was inappropriate under *Bruton* but concluded redaction — and not severance — would have been the proper remedy. *State v. Fogg*, 1998 Del. Super. LEXIS 238, at *16 (Del. Super. Ct. Feb. 20, 1998). On October 1, 1998, the Delaware Supreme Court affirmed Fogg's conviction and sentencing, holding the *Bruton* error harmless beyond a reasonable doubt when considered in context of the admissible evidence of his guilt. *Fogg*, 1998 Del. LEXIS 360, at *11.

On September 30, 1999, Fogg filed a motion for state post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. On August 1, 2000, the Superior Court summarily dismissed several claims raised in the Rule 61 motion as procedurally barred and denied the remaining ineffective assistance of counsel claims as meritless. *State v. Fogg*, 2000 Del. Super. LEXIS 263 (Del. Super. Ct. Aug. 1, 2000). On appeal, the Delaware Supreme Court remanded for further development of the record. The Superior Court subsequently conducted an evidentiary hearing and concluded Fogg failed to demonstrate counsel was ineffective. *State v. Fogg*, 2002 Del. Super. LEXIS 211 (Del. Super. Ct. Sept. 10, 2002). On December 23, 2002, the Delaware Supreme Court affirmed the Superior Court's decision. *Fogg v. State*, 817 A.2d 804 (Del. 2002).

The District Court for the District of Delaware denied Fogg's habeas petition on September 30, 2008, and, concluding Fogg had failed to make a "substantial showing of the denial of a constitutional right" as mandated by 28 U.S.C. § 2253(c)(2), declined to issue a certificate of appealability. 579 F. Supp. 2d 590, 616 (D. Del. 2008). Positing that "jurists of reason" could conceivably disagree with the district court's resolution of Fogg's constitutional claims, on June 22, 2009, we issued a certificate of appealability with regard to the four issues outlined below. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (elucidating the standard to which a petitioner seeking a certificate of appealability will be held).[3, 4]

### III.

### A.

The first set of issues surrounds Richmond's trial testimony. Recounting conversations he had with Andrus when both were incarcerated in Gander Hill Prison,

---

[3] As of oral argument in the instant case, Fogg was seeking post-conviction relief in the Delaware Superior Court for an alleged violation of his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). In 2009, Fogg became aware that the prosecution failed to disclose to defense counsel purported consideration furnished to Richmond in exchange for his testimony. The Superior Court has already denied Andrus' motion for post-conviction relief on account of the alleged *Brady* violation. *State v. Andrus*, 2010 Del. Super. LEXIS 309, at *4 (Del. Super. Ct. July 22, 2010).

[4] The District Court had subject matter jurisdiction to entertain Fogg's petition for a writ of habeas corpus under 28 U.S.C. § 2254. We issued a certificate of appealability and have jurisdiction to review the final judgment of the District Court under 28 U.S.C. §§ 1291 and 2253. When the District Court denies a habeas petition based on its review of the record and does not conduct an evidentiary hearing, our review is plenary. *Carrascosa v. McGuire*, 520 F.3d 249, 255–56 (3d Cir. 2008). We review the District Court's findings of fact for clear error and its legal conclusions *de novo. Id.*

Richmond testified Andrus had implicated both himself and Fogg in Dilley's murder. According to Richmond, Andrus told him he and Fogg kicked and stomped Dilley; Fogg "got way out of hand with it and just went too far;" and the incident transpired in the living room, after which the two men dragged Dilley to the bathroom. He also testified Andrus told him he and Fogg had attempted to resuscitate Dilley when they placed him in the bathtub and that the two had plans to dispose of the body but refrained because too many people knew Dilley had been at the party and had been in a tiff with Andrus. Richmond had provided a tape-recorded statement to the police and prosecution; the tape was played before the jury, and a written transcript of the statement was entered into evidence.

The State has acknowledged the introduction of such evidence violated Fogg's Confrontation Clause rights under *Bruton*, but the Delaware courts and the District Court have concluded such error was harmless. Here, Fogg seeks habeas relief on the grounds that (1) the *Bruton* violation had a "substantial and injurious effect or influence" on the jury's verdict; and (2) his trial counsel was constitutionally deficient for failing to object to the *Bruton* violation or to request a limiting instruction. Because Fogg cannot prevail on his ineffective assistance claim if counsel's dereliction did not actually prejudice him at trial, the uniform finding of the lower courts that the *Bruton* violation constituted harmless error has heretofore prevented Fogg from obtaining habeas relief on either of these grounds. We find the reasoning employed by the Delaware courts and the District Court sound, and we will deny Fogg's motion on these grounds.

B.

1.

In *Bruton*, the Supreme Court held a defendant is deprived of his rights under the Confrontation Clause when a non-testifying co-defendant's confession naming the defendant as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. 391 U.S. at 136–37. Subsequently, in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), the Court held the Confrontation Clause is "not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."

Fogg did not object to Richmond's testimony as violating his Sixth Amendment rights at trial, but the Delaware Supreme Court *sua sponte* raised the issue on direct appeal and remanded the case to the Superior Court for reconsideration of its decision against severance. On remand, the Superior Court concluded redaction was feasible and, under *Richardson*, would have been a more appropriate remedy than severance. After remand, the State acknowledged a *Bruton* violation had occurred but argued it amounted to harmless error. The Delaware Supreme Court adopted the State's argument, opining "the error in admitting into evidence Andrus's statement incriminating Fogg was contrary to the holding of *Bruton* but was harmless beyond a reasonable doubt when it is considered in the context of the admissible evidence of Fogg's guilt." *Fogg*, 1998 Del. LEXIS 360, at *11.

9

2.

We assess the prejudicial impact of a constitutional error in a state-court criminal trial under the harmless-error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007). Under *Brecht*, a habeas petitioner must demonstrate constitutional error resulted in "actual prejudice" in order to obtain relief from a federal court; he will be afforded habeas relief only if such error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637–38. Critically, when constitutional error precipitates the admission of evidence without which the State would be unable to maintain the "necessary minimum evidence legally sufficient to sustain [a] conviction," such prejudice is "necessarily . . . substantial." *Kotteakos v. United States*, 328 U.S. 750, 763–64 & n.18 (1946). However, *Brecht* compels us to do more than merely query whether the State has adduced sufficient evidence to support the conviction notwithstanding such error. *Hassine v. Zimmerman*, 160 F.3d 941, 955 (3d Cir. 1998). If, after reviewing the trial record, we are in "grave doubt" as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, such error is not harmless irrespective of whether the State could theoretically sustain a conviction without the erroneously admitted evidence. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

3.

Fogg claims that, without Richmond's testimony implicating Fogg as Dilley's primary assailant, the State would have been unable to sustain a conviction for either

murder or conspiracy under a beyond-a-reasonable-doubt standard. Under *Kotteakos*, Fogg argues, such prejudice necessarily rises beyond harmless error. *See* 328 U.S. at 763–64 & n.18. In particular, Fogg argues the *Bruton* violations provided the State with non-duplicative evidence (1) signaling Fogg had formed the requisite *mens rea* for a first-degree murder charge; (2) identifying Fogg as the cause of Dilley's death; and (3) indicating Fogg and Andrus effectively conspired to cause Dilley's death. Only the first of these claims warrants close inspection.[5]

Under Delaware law, the prosecution must prove an individual intended to cause the death of another to obtain a conviction of first-degree murder. Del. Code Ann. Tit. 11, § 636(a)(1) (2010). Richmond had taken notes of his conversation with Andrus, and his handwritten scrawls indicated Fogg had told Dilley "I'll kill your ass m-f." Fogg claims this evidence was indispensable to the jury's finding that Fogg possessed the requisite *mens rea* to be convicted of first-degree murder. Critically, however, although the notes were initially admitted for the limited purpose of refreshing Richmond's recollection, they were stricken from evidence and from the trial record at Andrus' request prior to

---

[5] The District Court thoroughly debunked Fogg's contention that only Richmond's testimony permitted the jury to conclude Fogg had donned Andrus' boots and participated in the stomping that helped cause Dilley's death. *See* 579 F. Supp. 2d at 610. On account of the voluminous properly-admitted evidence suggesting Fogg's complicity in causing Dilley's death, the District Court properly ruled Fogg does not have a persuasive claim under *Brecht* that Richmond's testimony necessarily had a substantial influence on this jury determination. And Fogg's conspiracy argument does not pass muster. Even without the *Bruton* violation, the jury would have been able to draw on ample evidence in the record to determine Fogg "agree[d] with [Andrus] that they or 1 or

jury deliberations. Because neither Richmond's testimony nor his taped statement touched on this ostensible statement of intent, this alleged insight into Fogg's state of mind was never put before the jury. Without the notes, Fogg strains to torture a statement about disproportionate force (Fogg "got way out of hand with it and just went way too far") into one speaking to intent.

The State offered a wealth of evidence attesting to the grizzly nature of Dilley's murder, evidence which was probative of the culprits' intent. When paramedics arrived at the scene, they found Dilley lying prone in only his boxer shorts and socks. Blood was splattered on the walls and carpets of the house. According to the testimony of the Medical Examiner at trial, Dilley had suffered multiple severe injuries caused by "kicking, punching, stomping and striking or being struck with blunt objects as well as hands and shod feet." The injuries to Dilley's face were so dramatic that his nose was torn away from his cheek and his ears were torn away from the back of his head. A false plate inside his mouth had been broken into multiple pieces, and the hyoid bone underneath his chin was fractured. The Medical Examiner testified Dilley died as a result of extreme blood loss complicated by the inhalation of blood and vomit into his airway. Evidence of such "directed and persistent brutality" is sufficient to support a finding of intent for first-degree murder. *See Smith v. Bradshaw*, 591 F.3d 517, 525 (6th Cir. 2010); *Willingham v. Mullin*, 296 F.3d 917, 927 (10th Cir. 2002).

more of them [would] engage in conduct constituting the felony." *See* Del. Code Ann. Tit. 11, § 513 (2010).

4.

In sum, we agree with the District Court's conclusion that "Richmond's statement was cumulative of the other . . . evidence [properly] admitted during petitioner's trial." 579 F. Supp. 2d at 610. The Delaware courts, employing the "harmless beyond a reasonable doubt" standard from *Chapman v. California*, 386 U.S. 18, 24 (1967), also denied Fogg post-conviction relief on account of the *Bruton* violations. The record does not leave us in "grave doubt" as to whether the error had a "substantial and injurious" effect on the jury's verdict. Therefore, Fogg's *Bruton* claim fails under the *Brecht* standard.

C.

Next, we must decide whether trial counsel's failure to object to the *Bruton* evidence or to request limiting instructions constituted ineffective assistance of counsel in violation of Fogg's constitutional rights. To prevail on an ineffective assistance claim, a petitioner must demonstrate both that (1) counsel's performance fell below an objective standard of reasonableness measured under prevailing professional norms; and (2) counsel's deficient performance actually prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The ineffective assistance claim is parasitic on the substantive Sixth Amendment claim; to prevail under *Strickland*, Fogg must necessarily prove the *Bruton* error was substantial and injurious. Thus far, each court reviewing Fogg's ineffective assistance claim as it pertains to the *Bruton* violation has held counsel's performance constitutionally sound because its predicate finding of

13

harmless error has rendered Fogg incapable of proving "prejudice" under the second *Strickland* prong.

The Delaware Superior Court considered the ineffective assistance claims to be "merely refinements of the *Bruton* issue which was rejected by the Delaware Supreme Court in Defendant's direct appeal. . . . The Supreme Court has already ruled that the error in admitting Richmond's testimony was harmless error beyond a reasonable doubt." *Fogg*, 2002 Del. Super. LEXIS 211, at *51. Therefore, with the *Bruton* error deemed harmless, the court held Fogg could not satisfy the second prong of the *Strickland* test because counsel's failure to object to Richmond's testimony did not actually prejudice Fogg at trial. The Delaware Supreme Court affirmed, adopting the Superior Court's reasoning. *Fogg v. State*, 817 A.2d 804 (Del. 2002).

For a federal court to grant a petitioner's application for habeas relief with respect to a claim "that was adjudicated on the merits in State court proceedings," the state court's decision must have been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . ." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, we must determine whether the Delaware Supreme Court's application of *Strickland* was unreasonable. The District Court, having similarly concluded the *Bruton* error constituted harmless error, ratified the Delaware courts' conclusion that Fogg was not actually prejudiced by counsel's failure to raise the violations or to request limiting instructions. 579 F. Supp. at 615.

14

As noted above, Richmond offered scant insight into Fogg's alleged intent apart from his notes that were stricken from the record. Because the physical and circumstantial evidence so convincingly pointed to Fogg's guilt, counsel's failure to object to the *Bruton* violation cannot be said to have actually prejudiced Fogg at trial. Both the Delaware courts and the District Court found the *Bruton* error harmless and counsel's performance therefore secure under the *Strickland* prejudice prong. Because the Delaware courts reasonably applied *Strickland* in finding counsel's errors relating to the *Bruton* claim did not actually prejudice Fogg at trial, we will deny Fogg habeas petition on this ground.

IV.

A.

Fogg claims his Fourteenth Amendment rights to due process and a fair trial were compromised by the introduction of evidence tending to depict him as having a bad character and by the trial court's corresponding failure to issue appropriate limiting instructions regarding use of character and prior bad acts evidence. Specifically, Fogg points to evidence portraying him as having a penchant for alcohol consumption, an occasional drug habit, and a tendency to engage in physical altercations (and to use his legs and feet as weapons when partaking in such confrontations) when inebriated, as well to testimony concerning his allegedly having drunkenly trashed a motel room days before Andrus' party and having instigated two fights with Cathell the night before Dilley was found dead. The District Court declined to assess this Fourteenth Amendment claim on

15

its merits. First, it rejected Fogg's contention he properly presented the claim to the Delaware state courts as an issue of federal law, and it therefore concluded Fogg had failed to exhaust state remedies in violation of 28 U.S.C. § 2254(b). 579 F. Supp. 2d 611–12 & n.5. Second, it held Fogg could not demonstrate adequate "cause" for procedurally defaulting on this claim because the Delaware courts had not unreasonably applied *Strickland* in analyzing and denying Fogg's interrelated ineffective assistance of counsel claim. *Id.* at 612. Because we agree with the District Court on both counts, we will not reach the merits of Fogg's Fourteenth Amendment claim.

### B.

As a threshold matter, we must scrutinize Fogg's contention that he fairly presented his due process claim in the Delaware state courts and has therefore satisfied 28 U.S.C. § 2254(b)(1)(A), which stipulates an application for a writ of habeas corpus "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." Fogg did not argue at the state-court level that admission of this testimony violated his federal or state constitutional rights. Rather, when Fogg filed a Rule 61 motion alleging ineffective assistance of counsel, he anchored the motion — in part — on counsel's failure to object to or request a limiting instruction as to this character evidence.

"[T]he federal claim must be fairly presented to the state courts," and the state prisoner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). To "fairly present" a claim, a

16

petitioner "must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted;" that a "somewhat similar state-law claim was made" will not suffice. *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (internal quotation omitted); *see also Zicarelli v. Gray*, 543 F.2d 466, 472–73 (3d Cir. 1976) (*en banc*) ("the method of analysis asserted in the federal court must have been readily available to the state court," and the petitioner "must give the state system the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief") (internal quotations omitted).

Fogg relies heavily on *Lesko v. Owens*, 881 F.2d 44 (3d Cir. 1989), for the proposition that couching his due process claim within the guise of an ineffective assistance of counsel claim is sufficient to satisfy the exhaustion prerequisite. His argument is unavailing. In *Lesko*, we found exhaustion where the defendant's habeas petition rested on a legal theory (balancing the probative value of evidence against its prejudicial effect) and facts that had previously been submitted to the state courts. *Id.* at 50.[6] Thus, although the appeal in the state courts was rooted in state evidentiary concerns, the issue decided by those courts was the "substantial equivalent" of the defendant's

---

[6] Here, the ultimate legal theory employed by the Superior Court upon Fogg's Rule 61 motion was the *Strickland* standard for ineffective assistance, not the balancing test used to assess whether the evidence should have been excluded or limited on account of its prejudicial value. *Fogg*, 2002 Del. Super. LEXIS 211, at *80–*89. The balancing test was invoked only within the framework of analyzing *Strickland's* "prejudice" prong in determining whether the court would likely have admitted certain evidence over counsel's objection. The court did not have occasion to review the admission of this

Fourteenth Amendment due process claim contained in his habeas petition. *Id.* While *Lesko* does support the premise that the exhaustion doctrine permits a habeas petitioner to include a constitutional claim that was pressed in the state courts merely as a violation of state law, its rationale is not so expansive as to allow a petitioner to transmute an ineffective assistance of counsel claim based on a violation of state law into a due process claim. Because Fogg never presented his due process claim outside the confines of his ineffective assistance claim and thus never put the state court on notice that he was asserting a constitutional grievance, the District Court properly concluded Fogg had failed to exhaust his Fourteenth Amendment claim in the state court system.

C.

1.

Next, we must determine whether Fogg has successfully made a showing of "cause and prejudice" to overcome the procedural default at the state court level. Although failure to exhaust a claim ordinarily results in dismissal of the habeas petition, *Rose v. Lundy*, 455 U.S. 509, 519 (1982), such failure will be excused if state law "clearly forecloses review of the unexhausted claim," *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

---

testimony as part of a freestanding claim that the evidence itself transgressed Fogg's constitutional rights.

The parties and the District Court agree that Delaware Superior Court Criminal Rules 61(i)(2) and 61(i)(3) would now preclude Fogg from obtaining review of this due process claim in a state court proceeding.

When a state prisoner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (1991). The "fundamental miscarriage of justice" standard requires a state prisoner to demonstrate that he is "actually innocent of the crime . . . by presenting new evidence of innocence." *Keller v. Larkins*, 251 F.3d 408, 415–16 (3d Cir. 2001). Because Fogg does not ask us to consider new exculpatory evidence on appeal, we need only concern ourselves with the "cause and prejudice" exception to the procedural default rule.

2.

To demonstrate cause for procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, Fogg once more turns to the allegedly defective performance of his counsel. *See id.* (establishing that a criminal defendant whose attorney's assistance was constitutionally inadequate under *Strickland* may use this deficiency to establish cause for procedural default). Because the Superior Court denied this claim as meritless (and the Supreme Court

19

affirmed the lower court's judgment "for the reasons set forth in [its] decision"), Fogg's entitlement to habeas relief turns on whether the Delaware Supreme Court's decision "involved an unreasonable application" of federal law. *See* 28 U.S.C. § 2254(d)(1).

As to the first *Strickland* prong (objective reasonableness), Fogg alleges counsel (1) failed to object to the prior bad acts evidence or request a limiting instruction; (2) was unfamiliar with the principles embodied in certain seminal cases; and (3) lacked a coherent trial strategy regarding whether to request redaction of certain evidence or how to spin harmful evidence to Fogg's advantage. To provide the legal footing for his reanimated ineffective assistance claim, Fogg cites *Thomas v. Varner*, 428 F.3d 491, 499, 501 (3d Cir. 2005), *cert. denied sub nom. Palakovich v. Thomas*, No. 06-130, 2007 U.S. LEXIS 37 (Jan. 8, 2007) (*Strickland's* presumption that challenged actions may have been part and parcel of a "sound trial strategy" can be overcome by a showing that such actions "could never be considered part of a sound strategy" or if counsel was "unfamiliar with clearly settled legal principles"), and *Albrecht v. Horn*, 485 F.3d 103, 128 (3d Cir. 2007) ("Where evidence of a defendant's prior bad acts is admitted, a defendant's interests are protected by a limiting instruction, which mitigates the possibility of prejudice.").

And as to the second *Strickland* prong (prejudice), Fogg claims there is a "reasonable probability" that, had an objection been raised or a limiting instruction issued, the jury would not have utilized propensity evidence to convict him. *See Albrecht*, 485 F.3d at 128. Moreover, he argues appellate counsel's failure to raise the evidentiary

20

issue on direct appeal forced post-conviction counsel to broach it not as a self-contained, discrete claim but as the underlying basis for an ineffective assistance claim which was unlikely to succeed on account of *Strickland's* tolerance of a "wide range of professionally competent assistance" and presumptions of efficacy. *See* 466 U.S. at 690.

3.

In state court, Fogg contended counsel should have endeavored to exclude (1) references in Fogg's April 5, 1995 videotaped statement to his proclivity for becoming belligerent when intoxicated, his tendency to use his feet as weapons when fighting, and other generally unflattering habits; (2) Adams' testimony that Fogg had gotten drunk and ravaged her motel room days before the murder; and (3) evidence Fogg had goaded Cathell into a fight by kicking his leg and knocking his hat off. *Fogg*, 2002 Del. Super. LEXIS 211, at *80–*89.

As to the videotaped statement, the Superior Court concluded Fogg could not satisfy the first *Strickland* prong because he had "failed to show that trial counsel's strategic choice . . . not to redact. . . was unreasonable," and also failed to meet the second prong because he could not prove redactions to the statement would have resulted in a different outcome. *Id.* at *81–*83. With regard to the motel room fracas, the Superior Court credited trial counsel's explanation that he had balanced the deleterious impact of the incident against the salutary advantages of providing the jury with an alternative explanation for Fogg's hand injuries. Because this was not objectively unreasonable, the court held Fogg could not satisfy the first *Strickland* prong. *Id.* at *83–*84. And, as to the

evidence of Fogg's altercations with Cathell, the court concluded (1) the evidence would have been admissible over an objection raised by Fogg under Delaware Rule of Evidence 404(b) and *Getz v. State*, 538 A.2d 726, 734 (Del. 1988), because it tended to show motive or state of mind, and the acts were not prohibitively remote in time; and (2) counsel had made a calculated decision not to request limiting instructions in order to avoid underscoring the issue. *Fogg*, 2002 Del. Super. LEXIS 211 at *84–*89; *see also Werts*, 228 F.3d at 203 ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). The Delaware Supreme Court affirmed. *Fogg*, 817 A.2d at 804.

The District Court correctly concluded the Delaware courts reasonably applied *Strickland* in denying this portion of Fogg's ineffective assistance claim. 579 F. Supp. 2d at 615. Therefore, Fogg cannot use this claim of constitutionally ineffective assistance of counsel to establish "cause" for his procedural default in state court. Because the fate of Fogg's exhortation to consider his unexhausted Fourteenth Amendment claim is contingent on his ability to establish cause for his procedural default, we will affirm the District Court's dismissal of Fogg's due process claims on this ground.

V.

For the foregoing reasons, we will affirm the judgment of the District Court denying Fogg's petition for habeas relief.

22